FILED
2004 APR 27 PM 2:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PEGGY RUBIO,

    PLAINTIFF,

v.                            CASE NO.: CV-03-J-2468-S

SIROTE & PERMITT, P.C.

    DEFENDANT.

ENTERED
APR 27 2004

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 14), evidence in support of said motion (doc. 15) and memorandum in support of their motion (doc. 16), to which the plaintiff filed an opposition (doc. 17) and exhibits in support of her opposition (doc. 18). The defendants thereafter filed a reply (doc. 19). The court having considered the pleadings, evidence and memoranda of the parties finds as follows:

### I. Factual Background

Plaintiff sues her employer for violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq.*, and sexual harassment and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*. Plaintiff began working for the defendant, in its Real Estate section, in August, 2002. Complaint, ¶

20

12. She was 51 at the time. *Id.*, ¶ 13. On November 14, 2002, the plaintiff was called into a meeting with her supervisor, Sheila Fore Lambert. Plaintiff depo. at 46. The plaintiff was accused of sexually harassing a co-worker, whom she hugged and asked if the co-worker's father was better. Lambert claimed plaintiff had previously hugged her and grabbed another employee's rear-end, as well as making inappropriate remarks. The plaintiff was also told that the other women in the department thought the plaintiff touched them inappropriately. Plaintiff depo. at 22-23. Lambert then asked the plaintiff if she was bisexual, placed her hand on plaintiff's leg, and told her that she had a best friend who was bisexual. *Id.* at 21-22. Plaintiff took this as Lambert making a pass at her. *Id.* at 68. Plaintiff states this incident, where Lambert touched her leg and asked if she was bisexual, is the basis of her sexual harassment claim. Plaintiff depo. at 21-23.

Plaintiff alleges that, on November 21, 2002, she tried to complain to the individuals designated in the employee manual concerning Lambert's touching her, but since they were unavailable, she told Jeff Underwood, an attorney, then resigned. Plaintiff depo. at 67-68, 72. When she went to talk to Underwood, she had already decided to quit. Plaintiff depo. at 73.

Shortly thereafter, Donna Mathews, the assistant human resources director, called plaintiff and asked her to reconsider because she was a valuable employee.

Plaintiff depo. at 72. Plaintiff sent Michele Deese, defendant's Human Resources Director, an e-mail dated November 23, 2002, rescinding her resignation. *Id.* at 84; def. Ex. 5 to plaintiff depo. She also e-mailed John Cooper about rescinding her resignation. Plaintiff depo. at 118, def. ex. 16 to plaintiff depo. Deese received plaintiff's notice of resignation from Jeff Underwood and Donna Mathews and plaintiff's e-mail all on November 27, 2002, when she returned to her office. Deese declaration. ¶ 6. Upon investigation, Deese learned that co-employees had complaints about plaintiff's inappropriate behavior toward them. *Id*, ¶ 7; White declaration, ¶¶ 4, 5. Thus, she decided to accept plaintiff's resignation. Deese declaration, ¶ 7. She states she had no knowledge of plaintiff's complaint of sexual harassment at the time she made the decision. *Id.* Plaintiff denies she ever engaged in any inappropriate behavior toward her co-workers. Plaintiff declaration, submitted as plaintiff ex. 5.

In a meeting with Michele Deese on December 2, 2002, the plaintiff was not allowed to "unresign." *See e.g.*, def. ex. 17 to plaintiff depo; Cooper declaration, ¶ 2. The plaintiff states she was fired in retaliation and because she "wasn't a good fit." Plaintiff depo. at 99. She then states she was fired in retaliation for reporting sexual harassment because "I didn't fit in; I was a trouble maker. I raised the bar, because I was always at my desk. I always worked; I didn't goof off." Plaintiff depo. at 100. She then adds she was fired for reporting the sexual harassment. Plaintiff depo. at

101. At this meeting, the plaintiff inquired what was being done about her sexual harassment claim, which was Deese's first notice of such a claim. Deese declaration, ¶ 8; Cooper declaration, ¶ 4. Defendant later informed the plaintiff that it found no evidence of sexual harassment after an investigation. Deese declaration, ¶ 9; def. exhibit 17 to plaintiff depo.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates

the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

#### A. ADEA

The plaintiff stated in her deposition that she did not believe anyone had any animus against her because of her age. The plaintiff failed to address any claim under

the ADEA in her opposition to the defendant's motion to summary judgment. The plaintiff testified that "they fired me because I caused trouble, because I reported sexual harassment." Plaintiff depo. at 101. The court therefore finds that the plaintiff has abandoned any claim under the ADEA and shall grant the defendant's motion on this claim.[1]

### B. Sexual Harassment

To demonstrate sexual harassment, a plaintiff must show: (1) that "she belongs to a protected group;" (2) that she "has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature;" (3) that the harassment was "based on [her] sex ...;" (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) "a basis for holding the employer liable." *Johnson v. Booker T. Washington Broadcasting Service, Inc.* 234 F.3d 501, 508 (11th Cir.2000); *citing Mendoza v. Borden*, 195 F.3d 1238, 1245 (11th Cir.1999).

In the facts before this court, the plaintiff's allegations fall short of the minimum recognized as harassment by the Eleventh Circuit. *See e.g., Gupta v.*

---

[1] While the defendant also moves for summary judgment on the plaintiff's claim of sex discrimination, the court can find no such claim brought by plaintiff. Thus, the court does not address any such claim. If the plaintiff could be found to have brought any such claim, said claim is found to have been abandoned by the plaintiff due to her failure to address the same in her opposition to the defendant's motion.

*Florida Board of Regents*, 212 F.3d 571, 585 (11th Cir. 2000). One incident of leg touching is simply insufficient. The prohibition of harassment on the basis of sex forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 1002-03, 140 L.Ed.2d 201 (1998). The conduct in question must be severe or pervasive enough a reasonable person would find it hostile or abusive. *Clover v. Total System Services, Inc.* 176 F.3d 1346, 1351 (11th Cir.1999). *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998).

To assess the objective hostility of the conduct, the court must look at four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1285 n. 12 (11th Cir.2003), *citing Mendoza,* 195 F.3d at 1246.

Accordingly, a plaintiff must establish not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive. *See Mendoza,* 195 F.3d at 1246; *Faragher,* 524 U.S. at 788, 118 S.Ct. at 2284 (explaining that the objective component of the "severe and pervasive" element prevents "the ordinary tribulations of the

7

workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" from falling under Title VII's broad protections (citation omitted)).

The evidence presented to this court, a one time suggestive comment with a hand placed on a thigh, simply does not rise to the level that a reasonable person would find it to be "severe and pervasive" harassment, regardless of how the plaintiff perceived it. *See Gupta,* 212 F.3d at 583, 586 ("A finding that [plaintiff's] complaints constitute sexual harassment would lower the bar of Title VII to punish mere bothersome and uncomfortable conduct, and would trivialize true instances of sexual harassment" (citation omitted)). The court shall grant the defendant's motion for summary judgment on this claim by separate order.

### C. Title VII Retaliation

As to the plaintiff's retaliation claim, the plaintiff 'need not prove the underlying claim of discrimination which led to her protest,' so long as she had a reasonable good faith belief that the discrimination existed.' *Gupta,* 212 F.3d at 586, citing *Meeks v. Computer Assocs. Int'l.,* 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989)). To establish a prima facie case of retaliation for engaging in protected activity, the court must use the familiar *McDonnell-Douglas* burden shifting standard. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta,* 212 F.3d at 587, citing *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir.1999). *See also Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999); *Holifield v. Reno,* 115 F.3d 1555, 1566 (11th Cir.1997).

Protected activity under Title VII includes complaining to superiors about sexual harassment. *Johnson,* 234 F.3d at 507, citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) ("[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [plaintiff], who informally voice complaints to their superiors or who use their employers' internal grievance procedures."). The plaintiff's complaint of sexual harassment to Jeff Underwood satisfies the first prong of the plaintiff's prima facie case.

The plaintiff suffered an adverse employment action as well, namely the refusal of Deese to allow the plaintiff to rescind her resignation. Thus, in order to establish a prima facie case of retaliation, the plaintiff must establish the requisite causal connection between her statutorily protected conduct and the adverse employment

action. "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." *Clover v. Total System Services, Inc.* 176 F.3d at 1354, citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993).

Here, the plaintiff announced she was resigning. She then rescinded her resignation. She was told she could not withdraw her resignation. The decision maker, Michele Deese, asserts she had no knowledge of the plaintiff's harassment claim at the time she told plaintiff she could not return to work. Deese declaration, ¶ 8; Cooper declaration, ¶ 4. The defendant therefore argues the termination could not be in retaliation for her complaint of harassment. A decision maker must be aware of the protected action in question before a discriminatory intent can be implied from an adverse employment action. *See Brungart v. BellSouth Telecommunications, Inc.* 231 F.3d 791, 799 (11th Cir.2000); *Goldsmith,* 996 F.2d at 1163 ("In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action"); *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir.1997) ("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression ... when taking the action.").

Here, the defendant has set forth evidence that Deese did not allow the plaintiff to rescind her resignation after hearing numerous complaints about the plaintiff. Although the plaintiff asserts those complaints were untrue, she does not offer any evidence that Deese did not believe them, or that this was not the real reason Deese did not allow her to withdraw her resignation. *See e.g., Abel v. Dubberly,* 210 F.3d 1334, 1338 (11th Cir.2000). As such, the plaintiff has failed in her burden to show a causal connection between her protected activity and the adverse employment action.[2]

Having considered the foregoing, the court finds that summary judgment must be granted on behalf of the defendant and against the plaintiff on this claim. The court shall do so by separate order.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary

---

[2]Even if the plaintiff could establish a causal connection, the court would find that the defendant's proffered reason for not allowing the plaintiff to rescind her resignation is a legitimate reason for its employment action. The plaintiff would then have to show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. *See Johnson v. Booker T. Washington Broadcasting Service, Inc.* 234 F.3d 501, 507 (11th Cir.2000), citing *Sullivan v. National Railroad Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir.1999) (quoting *Raney v. Vinson Guard Service,* 120 F.3d 1192, 1196 (11th Cir.1997). Because plaintiff cannot establish any evidence that Deese knew about the plaintiff's complaint of sexual harassment, the plaintiff fails in this burden, and summary judgment would still be granted.

judgment on all counts of the plaintiff's complaint is hereby **GRANTED**. The claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 27 day of April, 2004.

                                                INGE P. JOHNSON
                                                UNITED STATES DISTRICT JUDGE